**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERY R. WERNER | CIVIL ACTION NO. |
| *Plaintiff*, | 17-CV-_____ |
| v. | |
| BUZZFEED, INC. | |
| *Defendant*. | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Jeffery R. Werner ("Mr. Werner") complains against Defendant Buzz, Inc. ("Buzzfeed"), alleging as follows:

1. The address of each named party is: JEFFERY R. WERNER, 4910 1/4 McConnell Ave., Los Angeles, CA 90066; BUZZFEED, INC., 111 East 18th Street, New York, New York, 10003.

2. This is an action for copyright infringement of a professional photographer's work arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over the copyright infringement claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

4. This Court has general personal jurisdiction over the Defendant because it does continuous and systematic business in Manhattan, New York City, the location of Buzzfeed's principal place of business.

5. Venue is proper pursuant to 28 U.S.C. § 1400(a) (venue in copyright actions) as Defendant may be found in this District where it is subject to the Court's jurisdiction. In addition, venue is proper under 28 U.S.C. 1391(1) (defendant's residence) and 28 U.S.C. 1391 (2) (where actions occurred).

## THE PARTIES

6. Plaintiff, Jeffery Werner, is an individual who resides in Los Angeles, California. He is the owner of the copyrights to the photographs that are the subject of this action.

7. Defendant, Buzzfeed, Inc. ("Buzzfeed"), is a corporation organized and existing under the laws of the state of Delaware that does business as "BUZZFEED.COM" from offices in New York City.

## FACTS

### Mr. Werner is a Professional Photographer

8. Mr. Werner has over 35 years of experience as a professional photographer. His work has appeared in magazines world-wide as covers, features, and editorial coverage in publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly*, and *Page Six Sunday Magazine* (*NY Post*) and many others. He has had over 100 double-page spreads in the National Enquirer. His photographs of amazing stunts, performed with motorcycles, airplanes, trains, and other vehicles, were featured on such television shows as: *That's Incredible!, The World's Greatest Stunts, Stuntmasters, Guinness World Record Spectaculars, Ripley's Believe It Or Not*, and *I Dare You*. Werner's portfolio of images has also been featured in a 16-

2

page spread in both French and Italian *Photo* magazines, with pickups appearing in *Panorama* magazine (Netherlands), *Stern* (Germany), *Photo District News* (US), *Mad* magazine (France), and the 25th anniversary issue of *New Look* magazine. Many of his iconic photographs were also chosen to be published in the TALK/MIRIMAX coffee table book "The National Enquirer, Thirty Years of Unforgettable Images." Jeffery Werner is a member of the Los Angeles Press Club and the American Society of Media Photographers, and is the president of an editorial photo syndication agency, Incredible Features, Inc.

    9.    Mr. Werner has developed a specialty in photographing stunts and stuntmen and women. His attention to detail, even while filming dangerous stunts with his signature 15-camera remote photography set-up, has exposed him to the danger involved in getting very close to the action. Capturing these explosive photo sequences landed him the exclusive honor of being the only still photographer inducted into The Stuntworld Hall of Fame. Featured on a segment of "The Adventures" TV show, he was referred to as the "da Vinci of daredevil photography" (https:// helldriversmovie. wordpress.com/2008/11/10/incredible-stunts-book/). French *Photo* called him the "incredible but true photographer" and Caesar's Palace chose him as the official photographer for Robbie Knievel's jump across fountains that was covered by numerous magazines and TV outlets around the world, including *Life* and *Sports Illustrated*. Werner's body of stunt photography is displayed in 2009 coffee table book, *Incredible Stunts: The Chaos, Crashes and Courage of the World's Wildest Stuntmen and Daredevils* (ISBN-13: 978-0-9796349-9-4).

    10.    Mr. Werner is also well-known for his work with exotic animals,

celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles. Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the Annenberg Space for Photography in Los Angeles in 2009. Vince Streano, photographer and President Emeritus of the American Society of Media Photographers, has said that "Jeff is the Diane Arbus of the 21st century" because he crosses social lines to celebrate the odd - rather than belittle his subjects.

11. The uniqueness of Mr. Werner's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Incredible Features, Inc. Mr. Werner has always maintained the publishing rights to his works, knowing they would provide the revenue to produce his next story. Mr. Werner relies on income generated from licensing his photograph for his living. Plaintiff employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Plaintiff's portfolio.

12. Unfortunately, a multitude of unauthorized works by Mr. Werner are now on the internet as a result of intellectual property theft. The magnitude of this theft is a baleful compliment to his talents: web pirates, who pay nothing for stolen content, can select the best.

13. Mr. Werner's syndication company, Incredible Features, Inc., which licenses his work, has now been forced to add additional staff to discover piracy and to help collect the revenues due to him from the tide of copyright infringements. The policing of his intellectual properties became a cumbersome and expensive task which

adds to the cost of every image produced. As in the past, despite the constant struggle against internet piracy, Werner still relies on these revenues to produce his next incredible story and to pay his staff and vendors.

## **Infringement of Werner's Longest Nails Images**

14. On or about July, 2011, Mr. Werner created a photo feature about Chris Walton, a Las Vegas woman who holds the Guinness World Record for having the longest finger nails.

15. Mr. Werner registered his work with the Copyright Office on March 31, 2014 as VA 1-904-426 (the "Nails Protected Work"). *See* certificate and relevant deposits at Exhibit "1."

16. Werner's Longest Finger Nails photos were licensed to magazines, newspapers and/or TV outlets around the world, including the *Telegraph*, *Daily Mail*, *ITV Loose Women*, and *The Sun.*

17. On July 6, 2016, Buzzfeed posted to its website a "listicle" feature titled "19 Moments Of Pain Everyone With Fake Nails Will Recognize" (the "Nails Accused Work"). That feature published one image from the Nails Protected Work (item number 15). *See* Exhibit "2."

18. Buzzfeed also published the Nails Accused Work to its German language website. *See* Exhibit "3."

19. The Nails Accused Work was still displayed on Buzzfeed's website on February 23, 2017 with continually-updated advertisements or promotional links to other Buzzfeed articles.

20. The infringed images from the Nails Protected Work were copied to and

5

resided on Buzzfeed's servers. *See* Exhibit "4" (English) and Exhibit "5" (German).

21. Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted Buzzfeed any license to copy the Nails Protected Work.

### Infringement of Werner's "Snuggery" Image

22. In or about August, 2012, Mr. Werner covered a story on Jacqueline Samuel, a woman in Rochester, New York who had started a unique new business of cuddling clients. This new business was named "The Snuggery." Mr. Werner negotiated a contract with Ms. Samuel that gave him the right to a photo shoot and rights to exploit images of The Snuggery.

23. In September 2012, Mr. Werner flew to Rochester with an assistant to hold a photoshoot and video shoot at The Snuggery. He hired two local assistants, a makeup artist, and two models to depict Snuggery clients.

24. Mr. Werner registered his video work with the Copyright Office on November 4 2013 as PAu 3-708-183 (the "Snuggery Protected Work"). *See* certificate and relevant deposits at Exhibit "6."

25. On November 5, 2012, Buzzfeed's Photo Editor Macey J. Foronda contacted Mr. Werner about Buzzfeed's wish to license five images of the Snuggery Protected Work that had appeared in the *Daily Mail*. Buzzfeed wanted a one-month license with archive rights for the life of the site. *See* e-mail from Ms. Forondo at Exhibit "7." Mr. Werner offered to license the images but limited archive use to two images with full credit. John Gara, the Art Director at Buzzfeed, responded: "Thanks Jeffrey. We'll be in touch." *See* e-mail exchange at Exhibit "8." That was the last Mr. Werner heard from Buzzfeed, which was aware of his ownership of the Snuggery images.

26. Unable to negotiate a licensed use on terms that it sought, but still desiring the images, Buzzfeed simply stole Mr. Werner's work. On October 16, 2013 Buzzfeed posted to its website a feature titled, "There's A Place You Can Pay To Get Cuddled, But It's Not Open Yet For Fear Of Prostitution." *See* Snuggery Accused Work at Exhibit "9" (three images in middle or page 2). The Snuggery Accused Work created three GIFs – an image format that supports animations – from the Snuggery Protected Work.

27. The Snuggery Accused Work was still displayed on Buzzfeed's website on February 17, 2017 with continually-updated advertisements or promotional links to other Buzzfeed articles.

28. The infringed images from the Snuggery Protected Work were copied to and resided on Buzzfeed's server. *See* Exhibit "10."

29. Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted Buzzfeed any license to copy the Snuggery Protected Work.

30. Buzzfeed created its three GIFs from video that was watermarked with Copyright Management Information which Buzzfeed removed. *See* Exhibit "11" which displays for comparison frames from Werner's work at left with frames from Buzzfeed's GIFs at right showing the watermarks removed.

### **Infringement of Werner's "Giant George" Image**

31. On or about November, 2009, Mr. Werner conducted a photo shoot of Giant George, a seven-foot long Great Dane who at the time was being discussed as a contender for the title of "World's Tallest Dog," bestowed by the Guinness Book of World Records. Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Giant George's owner, and traveled to Tucson, Arizona, for the

7

photo shoot all at Incredible Feature's expense. The photo shoot resulted in a collection of photographs featuring Giant George.

32. The Giant George Protected Works were registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-005-177, effective as of November 11, 2009 (the "Giant George Protected Works"). *See* certificate and relevant deposits at Exhibit "12."

33. Mr. Werner licensed the Giant George Photographs to such media outlets as T*he Daily Mail*, *The Oprah Show*, *Maxim Magazine*, *National Geographic Reader*, *In Touch Weekly*, the *National Examiner, QUO Magazine* in Spain, and *30 Millions d'Amis*, Europe's premier animal magazine. In early February 2010, Giant George was declared by the Guinness Book of World Records as the world's tallest dog. That designation resulted in renewed interest in Mr. Werner's Giant George Protected Work, and created further licensing opportunities for him.

34. On February 23, 2010 Buzzfeed published on its website a feature titled "The Biggest Dog in the World" that was purportedly uploaded by a "user." *See* "Giant George Accused Work" at Exhibit "13."

35. At the time it published the Giant George Accused Work Buzzfeed was not entitled to DMCA "safe harbor" immunity because Buzzfeed had not filed with the Copyright Office any Designation of Agent to Receive Notification of Claimed Infringement. Buzzfeed first filed an Interim Designation of Agent to Receive Notification of Claimed Infringement with the Copyright Office on October 24, 2012. *See* Designation at Exhibit "14."

36. Buzzfeed was not deterred by the copyright notice inscribed in the Giant

8

George image it published, nor was it prompted to contact the known owner to request a license.

37. The Giant George Accused Work was still displayed on Buzzfeed's website on January 5, 2015 with continually-updated advertisements or promotional links to other Buzzfeed articles.

38. The infringed images from the Giant George Protected Works were copied to and resided on Buzzfeed's server. *See* Exhibit "15."

39. Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted Buzzfeed any license to copy the Giant George Protected Work.

## Infringement of Werner's Amazon Eve Images

46. In or about October, 2010, Mr. Werner created a photo feature and video film about Erika Ervin, known professionally as "Amazon Eve," a 6'8" tall transgender model, fitness trainer, and actress who, in 2011, was identified as the world's tallest fashion model by the Guinness Book of World Records.

47. Mr. Werner registered his works with the Copyright Office on October 25, 2010 as VAu 1-045-923 (the "Eve Protected Work"). *See* certificate and relevant deposits at Exhibit "16."

48. Werner's Amazon Eve photos were licensed to magazines, newspapers and/or TV outlets around the world, including *Daily Telegraph, The Sun, Daily Express, National Examiner, Daily Sport, Daily Mirror, T-Online, Guinness World Records Book*, and *ITV Daybreak*.

49. On January 10, 2011, Buzzfeed published on its website a feature titled "Amazon Eve" that was purportedly uploaded by a "user" (the "Amazon Eve Accused

Work.")  *See* Exhibit "17."

50. At the time it published the Amazon Eve Accused Work Buzzfeed was not entitled to DMCA "safe harbor" immunity because Buzzfeed had not filed with the Copyright Office any Designation of Agent to Receive Notification of Claimed Infringement. Buzzfeed first filed an Interim Designation of Agent to Receive Notification of Claimed Infringement with the Copyright Office on October 24, 2012. *See* Designation at Exhibit "14."

51. Buzzfeed was not deterred by the copyright notice inscribed in the Eve image it published, nor was it prompted to contact the known owner to request a license.

52. The Amazon Eve Accused Work was still displayed on Buzzfeed's website on January 14, 2015 with continually-updated advertisements or promotional links to other Buzzfeed articles.

53. The infringed images from the Amazon Eve Protected Works were copied to and resided on Buzzfeed's server. *See* Exhibit "18."

54. Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted Buzzfeed any license to copy the Amazon Eve Protected Work.

### Effect on Authors of Buzzfeed's Thefts of Intellectual Property

53. Apart from the particular injury to Mr. Werner, Buzzfeed's practice of intellectual property infringement threatens to diminish the market for photographic and other creative works. If authors whose business survival depends upon licensing their works find themselves in competition with their own works published by internet content pirates who simply misappropriate and publish it for commercial exploitation, the authors and their businesses cannot succeed. Very few authors will be able to produce

professional-grade content by investing time, effort and money in creating works that will be stolen by content pirates, and other websites will be encouraged to likewise acquire their inventory of content by theft as they cannot pay for licenses and compete with sites that do not do so.  That is precisely the misconduct that the Copyright Act was enacted to deter.

## COUNT I
### (Copyright Infringement, 17 U.S.C. § 501)

53. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 52.

54. Mr. Werner is the author and copyright owner of the four Protected Works referenced above.

55. Defendant have reproduced, displayed, distributed or otherwise copied the Protected Works without Mr. Werner's license or authorization.

56. The actions and conduct of Defendant as described above infringe upon the exclusive rights granted to photographers under 17 U.S.C.A. 106 to display, reproduce and distribute their work to the public.  Such actions and conduct constitute copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

57. Mr. Werner has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works pursuant to 17 U.S.C. § 408.

58. For those works for which Mr. Werner registered his copyright prior to the infringement, or within three months of publication, Mr. Werner is entitled to elect statutory damages under 17 USC § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement.  #

59. On information and belief, Buzzfeed's infringements were willful.

60. If Buzzfeed's copyright infringements are found willful, Mr. Werner is entitled to enhanced statutory damages pursuant to 17 U.S. Code § 504(c)(2) in the sum of up to one hundred fifty thousand dollars ($150,000) per work.

61. In the alternative, Mr. Werner is entitled to elect recovery of his actual damages and Buzzfeed's profits attributable to the infringement, pursuant to 17 U.S.C. 504(b).

62. Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

63. Pre-infringement registration also entitles Mr. Werner to seek an award of attorney's fees pursuant to 17 USC § 412 and § 505.

## COUNT II
(Contributory and Vicarious Copyright Infringement)

64. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 63.

65. Plaintiff is the author and owner of the copyrights to the Protected Works. All of the works at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

66. On information and belief, Buzzfeed knowingly induced, participated in, aided and abetted in, and profited from the illegal reproduction and distribution of the Protected Works.

67. On information and belief, Buzzfeed obtained direct and indirect profits it would not otherwise have realized but for the infringement of Mr. Werner's rights in the

Protected Work.

68. As a direct and proximate result of said acts of contributory infringement, Mr. Werner has suffered substantial damages in an amount to be proven at trial, as well as additional and special damages in an amount to be proven at trial.

69. Mr. Werner is entitled to actual damages and disgorgement of direct and indirect profits realized by Defendant in an amount to be proven at trial or, at his election, statutory damages.

70. Within the time permitted by law, Mr. Werner will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

71. Mr. Werner is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT III
### (Violation of Digital Millennium Copyright Act)

72. Mr. Werner incorporates by reference all the allegations of paragraphs 1 through 71.

73. On information and belief, Buzzfeed intentionally removed or altered copyright management information ("CMI") from the Snuggery Protected Works in violation of 17 U.S.C. § 1202(b) in order to induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C.A. § 1202.

74. In the alternative, on information and belief, Buzzfeed distributed, imported for distribution, and published works or copies of works knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, in violation of 17 U.S.C. § 1202(b)(3).

75. Buzzfeed had reasonable grounds to know that its misconduct would induce, enable, facilitate or conceal infringement.

76. On information and belief, Buzzfeed's actions were knowing, willful, reckless, and so warrant enhanced damages and penalties.

77. Mr. Werner is entitled to statutory damages of from $2,500 to $25,000 per each violation per 17 U.S. Code § 1203(c)(3)(B).

78. Mr. Werner is further entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4) and (5).

## **RELIEF**

WHEREFORE, Plaintiff requests judgment against the Defendant for:

1. A finding that Defendant infringed Plaintiff's copyright interests in the Protected Work by copying and publishing it for commercial purposes without any license or consent;

2. An award of actual damages and disgorgement of all of Buzzfeed's profits attributable to the infringement, as provided by 17 U.S.C. §504, in an amount to be proven at trial or, in the alternative, at Plaintiff's election, statutory damages for willful infringement pursuant to 17 U.S.C. §504(c)(1) or (2), whichever is larger;

3. An order, pursuant to 17 U.S.C. 502(a), enjoining the Defendant from any infringing use of any of Plaintiff's works;

4. An order, pursuant to 17 U.S.C. §§ 502 and 503, impounding or enjoining Defendant to turn over to Plaintiff all copies of the Protected Work claimed to have been made or used in violation of the exclusive right of the copyright owners; all plates, tapes, film negatives, or other articles by means of which such copies may be reproduced; and

records documenting the manufacture, sale, or receipt of things involved in any such violation.

     5.     An award of Plaintiff's attorney's fees and costs pursuant to 17 U.S.C. §505.

     6.     A finding that Defendant violated the Digital Millennium Copyright Act, 17 U.S.C. 1202, by knowingly removing Plaintiff's CMI attached to the Protected Work;

     7.     An award of the actual damages, pursuant to 17 U.S.C. §1203, suffered by the Plaintiff as a result of the violation of the Digital Millennium Copyright Act, and profits of Defendant that are attributable to the violation and are not taken into account in computing the actual damages or, in the alternative, at Plaintiff's election, statutory damages for removal of copyright management information pursuant to 17 U.S.C. §1203, whichever is larger;

     8.     An award of Plaintiff's' attorney's fees and costs pursuant to 17 U.S.C. §1203;

     9.     Pretrial interest as permitted by law; and

     10.     Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

                                              Respectfully submitted,

                                              **SPECTOR GADON & ROSEN, P.C.**

                                              By: */s/ Bruce Bellingham*
                                                   Bruce Bellingham, Esquire
                                                   David B. Picker, Esquire
                                                   1635 Market Street, 7th Floor
                                                   Philadelphia, PA 19103
                                                   (215) 241-8916
                                                   *dpicker@lawsgr.com*
                                                   *bbellingham@lawsgr.com*
April 19, 2017                           *Attorneys for Plaintiff*